Last, we have Corsair Special Situations Fund versus State Marshal. Good morning, Your Honors. May it please the Court, my name is Matthew Sturtz and I am here this morning on behalf of the Appellant Corsair Special Situations Fund. Your Honors, in this case there has been no levy, either actual or constructive, and thus there is no entitlement here for an award of 15% or $346,000 approximately to the Marshal. What Connecticut case do you think best supports your argument that no levy was completed here? I don't think there is a Connecticut case, Your Honor, that gives us guidance on this principle. I don't think the principle is unique, necessarily. If that's the case, shouldn't we be certifying this to Connecticut Supreme Court since it's a matter of Connecticut law? Your Honor, I appreciate that. I think that certainly with the lack of precedence, that's one of the criteria that you look to. But I'm not sure this issue, or at least in our view, raises the complexity that you would normally see in a referral type matter. But certainly if the matter were referred to Connecticut, we would expect the same result as we are pressing to the court today. Why don't we hear your argument as to why you think we can find that this was not a levy? I appreciate that, Your Honor. Thank you. Just briefly with a couple of the background facts, we know from this record that a writ was actually served. We also know that the language of the writ mirrors Connecticut statute, and it instructs the recipient, in this case National Resources, that you are required, quoting from the writ, you are required to pay to the marshal the amount of a debt owed by you to the judgment debtor, provided if the debt owed by you is not yet payable. Payment shall be made to the marshal when the debt becomes due within four months. We know from the facts of this case that no payment was ever tendered to the marshal. Was the debt due and owing on the day that the papers were served, or was it one that was going to come into, that was the obligation still to come due? In this instance, Your Honor, it was an ongoing development project, and so that the amount that we ultimately obtained in a turnover order that then came before this court before this court is an amount that we were able to calculate was actually paid out during the four-month period after service of the process. And so what we were anticipating by serving the writ on the developer of the project was that any monies then due and paid out to our judgment debtor, EFS, or Engineered Framing Systems, would instead be turned over to us. That standard way to enforce a contract, an account debtor, in this case National Resources, instead of paying my judgment debtor has to pay the money to me. Nothing was to be turned over to the marshal that day, but you're saying that it would have been payable over the next four months? It could have been payable that day if the portion that was due just happened to hit the jackpot. But yes, Your Honor. So is the thrust of your argument that because the money didn't get paid as a result of that notice that was served, but rather as a result of litigation that occupied, I gather, the next two years, that no levy was affected? Is that your argument? Yes, Your Honor, that is our argument. Because the levy itself contemplates an attachment by the sheriff, which of course creates a corresponding risk to the, in this case, the marshal, excuse me, depending on which state you're in, it's sheriffs or marshals. But that's what, that's why, Your Honor, there is an additional 15% if you have levied on assets that is paid over to a marshal versus, Your Honor, the standard situation of just a service of some formal process. But in this case, if the marshal had served the paper, and within a week or two, the first check went to your client, and then another two weeks, the next check went to your client, the marshal would have done nothing more than serve that paper, but then he would have been entitled to the 15%? Agreed. Okay. Absolutely, Your Honor. I just want to make sure I understood your position. Not once you had to go into court to affect it. That's right, Your Honor. And the reason for that is quite simple at its core. The, when you seize an asset, either constructively or actually, you assert legal rights and control over that asset, okay? In the instance of an actual construction, you've, of course, taken possession, literal possession of the asset. And so the marshal would have the asset, and the asset's not going to leave his hands absent some further court order. In a constructive levy, and I don't disagree with the district court, you can have a constructive levy. The classic example we see, Your Honors, is when you go post a notice of foreclosure on a home. You haven't actually literally taken physical possession of that home, but what you have done is you have given notice to the world that this particular asset, this piece of real property in my example, cannot be transferred, conveyed, assigned, sold to a third party because they are on notice that it has been posted and somebody's legal rights have been posted there. The exact same thing happens, Your Honors, when you send the sheriff or the marshal to a business enterprise and they are to identify the personal property of that business enterprise. So they may enter that enterprise and they may put their tags on furnishings, computers, other assets in the operation of that business. There is a label literally affixed to that asset so that notice is now given. The marshal doesn't pull up with a moving van and fill it up with all this stuff. They label everything to put everybody on notice. If the marshal has come forward, the marshal has asserted his or her legal rights over that and everybody is on notice. Those are constructive levies. That way the marshal ultimately can take the steps to turn those assets or the value of those assets over to the judgment creditor. None of that happens in this case. The actual money that is due is paid out by National Resources. It's approximately $2.1 million, and they pay it out to either Engineer Framing Systems or other creditors of Engineer Framing Systems. They flaunted the marshal's order. Correct. Well, they simply disregarded it, Your Honor. They didn't think they were bound by the command of the court. And they, of course, were wrong. But the money is now gone. I then ultimately, on behalf of Corsair, through extensive discovery, depositions, written document production, obtained the information indicating that you did refuse to obey this command and you're now going to pay twice. That's what happens. It's pursuant to the district court's turnover order that I ultimately obtained payment, not the marshal himself. It's once we notify him after the case concluded in this court, we notify him the case is now concluded, and we need your bill for services that he steps forward and says, oh, well, I'm calculating it based on the money that Corsair collected, not on the money that he collected. That's not what a marshal's fee for service of a writ is intended to do because the marshal literally, in the amount of time it will take us to argue this, the 20 minutes that this court has allotted, drove to this business establishment and handed them a piece of paper. That's what happened. And in that circumstance, the statute recognizes you're entitled to your fee for mileage and the $30 that was applicable at the time, and that's appropriate. That's not really all that persuasive because it was established by your answer to Judge Radji's question. If he had done exactly the same thing and the next day or five days later they had sent the check to you, you would say, well, that's you wouldn't contest that he's entitled to it under those circumstances. I wouldn't because that's clearly. I mean, certainly, certainly you wouldn't contest it if they paid the money to the marshal who then turned it over to you. That's exactly right. And if they simply eliminated the marshal and sent you the check directly, you would concede that that was constructively having taken, having seized, the marshal constructively seized it even if he never had his hands on the money. Correct, Your Honor. And, in fact, I believe our brief contains this site, and I apologize for not knowing the case off the top of my head, but that's exactly what happens. A marshal actually successfully causes the freezing of a bank account by serving a writ, and the parties end up getting together and decide to satisfy the judgment separate and apart from that. You have a quotation. You refer in your briefs to this passage in Corpus Juris Secundum that says that the sheriff's entitlement to the fee matures only when the property levied upon is legally seized by the sheriff and turned over to the judgment creditor. So are there old authorities that support that? What are the authorities that support what CJS said here in this passage that you quoted? Your Honor, that's an interesting question, and I can't tell you that I did a full search of the common law when we looked at that particular question, but we did go back to figure out what is the genesis of this entire distinction between just an administrative fee, if you will, and when would the sheriff be entitled to what is in this case obviously an extraordinary amount. It goes back to the taking of the physical property and the weighing of it to the pound, and then you weigh it and the marshal gets a percentage of the weight. Isn't that the common law? I think it's slightly different than that, Your Honor. The pound was actually the location. Right, right. So if it was taken. And it's where it's weighed. Whatever the good might be. My only suggestion is there may be instances where you've taken to the pound something that's not a, like a. . . I understand. Yes. But that's where it came from, Your Honor, was the risk. And that's why they're entitled to a greater fee. But in this case, you don't have that risk because ultimately, and it's not the marshal's fault, it's national resources chose to ignore his writ. Therefore, making his exercise at that point, that ended it. I then had to go forward for the next several years, sort all this out and bring it back to the court and ultimately to this court, Your Honor. It's for those reasons that Corsair has taken the position in this case that there was no levy. And levy, in reviewing the district court's analysis of the statute, levy is required in either scenario. That is a fundamental requirement. And once you satisfy levy, then you get to when the money is turned over, he's entitled to the fee. But you don't have a levy here, either actual or constructive. Therefore, you have no risk on the marshal's part, which would support such an extraordinary amount of money for literally driving 10 miles and serving someone with a piece of paper. For both the legal reasons we set forth, and we think the statute recognizes this inequity, we ask that the district court's order be reversed and the money ultimately be remitted to Corsair. We started with how we construe Connecticut law here. And let me ask you, the statute, of course, that provides for this, the payment of the 15 percent, provides it for the levy of an execution when the money is actually collected and paid over or the debt or a portion of the debt is secured by the officer. So am I to understand you that you're saying that the levy, when the money is actually collected or the debt is secured, means by the levy, not by something else, and that you're asking us to construe the language that way? That's right. Okay. And because the payment is going to the sheriff, it's the sheriff that had to levy. That's correct. So there is case law that if you bypass the sheriff and give it right to the debtor, that's okay, too? Absolutely. It makes perfect sense. All right. Thank you. Thank you, Your Honors. Counsel. Good afternoon, Your Honors. Neil Mosko, Yuri Mosko for the Marshal. I'll try to be very brief, but I think some excellent points have been raised during that colloquy, and I just want to note a couple of things very quickly. I have three points, and then I'll answer any questions that the bench may have. First and most importantly, the argument that we just heard that if the third-party debtor had paid the judgment creditor directly but had done so without the need for the turnover order, the levy would have been effective, I believe is dispositive of the issue before this case. That admission by the appellant acknowledges that the levy was effective against the debtor. That's the beginning and the end. Well, that's so. Well, let me. The argument of your adversary, as I understand it, is that a levy occurs when the property is in the custody, actual or constructive, of the marshal or the sheriff, and the proof of that here would be that they paid it over within a short period of time. The fact that people had to go into court and hire lawyers and conduct discovery and all of that suggests that there was no effective levy. So help me out with why that's not a correct way to look at it. Sure. Because an essential finding of the district court and this Court in affirming the district court's decision on the matter of turnover was that the service of process, the execution, was properly served and was effective against the third-party debtor. Proper service is a different question from whether a levy takes place. Indeed, my question to you would be what happened here that was anything more than the service of process? In this case, Your Honor, it's not, because the controlling statute, Connecticut General Statute 52-356a-4b, specifically circumscribes the action an officer must take to perfect a levy on a third-party debtor when the judgment debtor is not a natural person. And specifically, Your Honor, that statute provides that once the marshal serves the process on the third-party debtor, any debt then due or due within four months needs to be paid to the marshal. The fact that the statute, by its very terms, contemplates that the debt may not be due at that moment, may become due in the future, is the essential fact here, the essential proof here that the levy was completed at that time. The ability to say, if the debt doesn't come due for another week and the person pays it over pursuant to the marshal's actions, I understand how it's affected. But if instead the person gives it to some other individual and ignores the notice, I don't understand how the marshal has affected a levy. Well, as Judge Hall carefully set out when she went through both the legislative history and the case law in Connecticut, Connecticut recognizes that a levy is effective once, for purpose of a constructive levy, is effective once it's publicly declared by the marshal. And in here, that's exactly what happened. Connecticut also recognizes that the minimum fee for such execution shall be $30, which is the service of process fee. So that suggests that they contemplate that sometimes all that will happen is service of the process. That's correct, Judge. What would that circumstance be and how would it differ from what happened here? Sure. So, for example, we send a marshal out to do a bank execution and there's no money in the bank. He still gets his statutory fee plus mileage, $30 plus mileage, regardless of the fact that there was no money in the bank. This situation is much more analogous to the situation in which a real estate broker finds a ready, willing, and able buyer. A contract is put in place and the buyer defaults. The seller enforces the sale, has to hire attorneys, does discovery, goes to trial, whatever it takes to enforce the sale. The real estate broker is still entitled to his commission, regardless of the fact that all he did was produce the buyer. He didn't have anything to do with the rest of the situation. The task is to identify the buyer. The sheriff or the marshal's task is to acquire the property. No. In this particular case, under 356A.4b, the marshal's responsibility is to serve the third-party debtor with property owed to the judgment debtor. That's the thing. Roberts, is there anything that is within the powers of your client that is some – is there anything further that he was authorized by law, permitted by law, to do? No, Judge LaValle, and that's exactly – Nothing else that he could do? Not to the third party, Your Honor. And that's exactly what Judge Hall found, and there's no indication to the contrary. Moreover, this is precisely what the statutory scheme anticipates, that the marshal will make service. Well, now, suppose – are you telling me, for example, that if he called up – if he called up the party that was served, the third party that was served, and said, hey, I served that notice on you, when are you going to pay? Would that be illegal on his part? It wouldn't be illegal, but it's not required. No, I didn't ask you what was required. I asked you what he could do. Are there any things that he was permitted by law to do to effectuate – to effectuate the payment of the money there? Other than serve the execution, there's nothing under color of law that the marshal has authority to do. Now, whether – He is the party in interest at that point who is supposed to take possession of the property. Now, I understand he can't seize from a third party, but when the third party refuses compliance, what – he can't sue the marshal? No, Your Honor. The judgment – Do you have a case that says that he can't? Not with me today, Judge. Well, my concern is that there's something that seems to go against common sense to think that for serve – for effectively serving notice, that he now secures an extraordinary amount of money when how that – how the debtor received that money was by hiring a lawyer and going out because the levy didn't work. Well, Your Honor, the marshal also undertook an extraordinary amount of risk by making this service. He served a multimillion-dollar execution. If he had done it incorrectly, if he had not served it timely, such that the payment was made before he made service, he was potentially liable for that. And by its conduct – Are you referring to process service? Yes, Your Honor. To the extent that he negligently performed his duties, he's liable and malpracticed just as any other service – professional service provider. Other service professionals. That's correct. No more risk than anyone serving process. No, Your Honor. To the – as the Court in Nameth specifically discussed, the Connecticut Appellate Court in Nameth specifically discussed, the timely service of a writ of execution is something that is squarely on the – But the damages are the result of the marshal obtaining the property wrongfully, not anything in this case. I asked your adversary why we shouldn't, and he seems to think we should, construe the statute that provides for the 15 percent, which says for the levy of an execution when the money is actually collected and paid over or the debt is secured by the officer. Why that doesn't – that whole clause doesn't mean when the money is collected or the debt is secured by the – by the levying officer, not by – not by a separate court proceeding. Well, because as Judge Hall carefully went through when she went – De novo review. I – Can you tell me why we should conclude that that – why we should construe that language to mean anything other than the money collected or the debt secured by the officer who's now looking for the first 15 percent? Because those are two independent clauses, Your Honor. The first one – But it's the statute that says – you don't think when the money is actually collected or the debt or a portion is secured – I don't – – refers to when you're entitled to the money? No, Your Honor. 15 percent? As the district court made clear, and I think in a very well-reasoned view of the language, if you look at A2F, it reads, for the levy of an execution, comma, when the money is actually collected and paid over, comma, or – Under any circumstance. Or I'm – I'm – or the debt or a portion of the debt is secured by the officer. I believe, based on – and my client believes, based on the district court's claim and this Court's affirmance that the issuance of the execution effectively secured the payment of the money to the plaintiff. It did require a turnover order, but this Court and that Court found that the trigger for the requirement that it be – be paid over was the effective service of the execution. And that execution, therefore, secured the debt. How do we know this? It was paid twice. If it didn't secure the debt, it wasn't going to be paid a second time. So if the answer to this question isn't reasonably clear to us, should we ask the highest court of Connecticut to tell the answer? Well, Your Honor, you know, I think that the highest court of Connecticut, you know, essentially decided this issue, albeit on a different statute, 200 years ago. You know, whenever this issue – I'm asking you to answer my question. I'm sorry? I'm asking you to answer my question. I believe that the case law and Judge Hall's decision are effective and clear as to what this Court should do. If this Court has any concern, then certifying to the Connecticut Supreme Court is always an appropriate remedy on an issue in which the State's highest court has not ruled. Whenever this issue comes up, each side says it doesn't have to be certified, it's so clear. And then each side says, but I win. That's fair, Judge. Thank you very much.